## WILLIAM HARDING
### v.
## THE PEOPLE OF THE STATE OF ILLINOIS, FOR USE, ETC.

*Paupers—Action for Bringing into the County—Evidence.*

In an action under Sec. 13, Chap. 107, R. S., for bringing a pauper into the county, this court, on the evidence, reverses a judgment for plaintiff.

[Opinion filed June 15, 1889.]

APPEAL from the Circuit Court of St. Clair County; the Hon. B. H. CANBY, Judge, presiding.

Mr. MARSHALL W. WEIR, for appellant.

Mr. M. W. SCHAEFER, State's Attorney, for appellees.

REEVES, J. In the autumn of 1873, Henry Harding, then a lad of about fourteen years of age, came to St. Clair county from England. His parents were dead, and he had one brother and a sister living in St. Clair county. Later, two other broth-

ers came from England and settled in St. Clair county. When Henry arrived in this country he went to work with his brother in the coal mines, and continued to work with him until his brother was killed, in 1879. Henry was subject to epilepsy, and, as he grew older, the infirmity increased. On account of his condition it was found difficult, after his brother's death, to get any one to work with him; but his friends succeeded in keeping him at work a good part of the time for nearly two years, and thus he was able to earn his livelihood. By that time his condition had become so bad that no one could be found that was willing to work with him, and he was wholly incompetent to work alone. He continued to live with his brother's widow after his brother's death; but she was poor, and some assistance was afforded her by the county on account of her care of Henry.

The appellant's family removed from St. Clair county to Dakota in 1880 or 1881. At that time, or soon after, Henry went to Dakota, where he remained several years. While there, it appears that he was with the family of appellant. The proof conclusively shows that when Henry left St. Clair county he was without means of support, and wholly unable to earn his living. Some time in the year 1887 Henry returned to St. Clair county, and was in such condition that he became a county charge.

This suit was instituted to recover from appellant the statutory penalty for bringing a pauper into St. Clair county, as provided by Sec. 13, Chap. 107 of the Revised Statutes, and there was a verdict and judgment against appellant, from which he prosecutes this appeal.

The conclusion we have reached in the case does not involve the question, so ably and elaborately argued by counsel, as to how the residence of a pauper is gained or lost. We do not think that the evidence which we find in the bill of exceptions is sufficient to establish the fact that appellant brought the pauper, Henry Harding, into St. Clair county. We summarize the testimony on this point.

Henry Abend, overseer of poor of the town, testifies that he was called upon officially and asked to send Henry Hard-

Harding v. The People.

ing to the poor farm: "I examined him and found that he had been brought here from Dakota by Mr. Harding's folks; so it was stated to me. At least Harding's folks had brought him here and left him."

This testimony, so far as it stated what was told witness by others, was objected to by appellant's counsel.

"Q. Did you have any conversation with Mr. William Harding, the defendant?

"A. Yes, sir.

"Q. What did Mr. Harding say, if anything?

"A. Well, Mr. Seifert and I went out to speak to Mr. Harding about the matter, and he gave us to understand that he had nothing to do with the matter.

"Q. What did he say, if anything, about who brought him here?

"A. I heard him state twice before on the witness stand that his wife brought him here.

"Mr. Weir: No, you did not hear him say that.

"Witness: He said he would not go back on anything his wife done—that is my understanding of what he said."

Mr. M. F. Seifert testified that he had a conversation with William Harding about Henry's return from Dakota.

"Q. I will ask you what he said, if anything, about that?

"A. Well, as near as I can get at it, Mr. Harding said his wife brought him down.

"Q. Who said that?

"A. That was said!

"Mr. Weir: Some one said it, but Mr. Harding did not say whether she did or not.

"Witness: What I said is as near as I can get at it.

"Q. Did you hear Mr. Harding's testimony here at the other trial of this case?

"A. Yes, sir.

"Q. Do you remember what he testified then as to who brought him?

"A. To the best of my recollection, he said he did not know exactly who brought him. I never understood Mr. Harding to admit that his wife brought him.

J. T. Ward testified: "Know Henry Harding. I know when he came back from Dakota on the cars. I did not see anybody with him. All I know is that I saw him come out of the train. I met his brother there at the station, and he told me he was waiting for his brother, and when train arrived Henry got off. That is all I know.

"Q. Did you see Mrs. Harding on that train?

"A. I don't think I saw her on that train, but I saw her a day or two afterward in town. I do not think she got off the train that day."

We submit that this evidence is insufficient to charge appellant with the statutory penalty sought to be enforced against him, and for this reason the judgment of the Circuit Court is reversed and the cause remanded.

*Reversed and remanded.*